**RLC INDUSTRIES CO. and Subsidiaries, Successor to Roseburg Lumber Co. and Subsidiaries, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellant.**

No. 92–70718.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1994.

Decided June 19, 1995.

Kenneth W. Rosenberg, U.S. Dept. of Justice, Tax Division, Washington, DC, for respondent-appellant.

William H. Bradley, Sutherland, Asbill & Brennan, Atlanta, GA, for petitioner-appellee.

Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Section 611(a) of the Internal Revenue Code (I.R.C.) provides:

> In the case of ... timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion ..., according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary.

I.R.C. § 611(a). For purposes of calculating the depletion allowance, the regulations require grouping the taxpayer's timber into accounting units called "blocks." *See* Treas. Reg. § 1.611–3(d). Generally, the depletion allowance is then calculated individually for each "block" based on the adjusted basis of the harvested timber. *See* Treas.Reg. § 1.611–3(b)(2).

The regulations do not define the term "block" with any precision. Treas.Reg. § 1.611–3(d), "Aggregating timber and land for purposes of valuation and accounting," states:

> (1) With a view to logical and reasonable valuation of timber, the taxpayer shall include his timber in one or more accounts. In general, each such account shall include all of the taxpayer's timber which is located in one *block*. A block may be an operation unit which includes all the taxpayer's timber which would [1] logically go to a single given point of manufacture.... Blocks may also be established by [2]

> geographical or political boundaries or by [3] logical management areas....

> (5) For good and substantial reasons satisfactory to the district director, or as required by the district director on audit, the timber or the land accounts may be readjusted by dividing individual accounts, by combining two or more accounts, or by dividing and recombining accounts.

Treas.Reg. § 1.611–3(d)(1), (5) (emphasis in original).

During the tax years 1980–83, RLC Industries included in a single block all its timber located in Oregon and California, which allowed it to average the disparate cost bases of the timber in the two states. Because the more recently acquired California timber had a cost basis 20 times greater than the Oregon timber, RLC was able to claim an aggregate depletion allowance of $34.8 million for the 1980–83 tax years even though the aggregate cost basis of all of RLC's Oregon timber was only $10.9 million and the Oregon timber comprised 94% of the timber harvested during those years.

On audit, the Commissioner disallowed the inclusion of the Oregon and California timber in a single block and reduced the allowable depletion deduction for the four years in dispute to $7.5 million. The Commissioner arrived at this amount by dividing the Oregon and California timber into two separate blocks for accounting purposes.

Before the Tax Court, the Commissioner justified her separation of the Oregon and California timber by arguing that RLC's holdings in the two states did not meet the requirements of a single block under Treas. Reg. § 1.611–3(d)(1) ("subsection (d)(1)"), and even if they did, she had a "good and substantial reason" under Treas.Reg. § 1.611–3(d)(5) ("subsection (d)(5)") for dividing the timber into two blocks because RLC's depletion allowance was unreasonably large relative to the cost basis of the timber that was actually harvested.

The Tax Court rejected these arguments. After ten days of hearing evidence that included testimony from a variety of experts, the Tax Court made detailed findings of fact

regarding RLC's timber holdings and operations. These findings provided the basis for the Tax Court's ultimate finding that the Oregon and California holdings comprised a "common logical management area" and therefore were properly included in a single block under subsection (d)(1). The Tax Court also held that there was no "good and substantial reason" under subsection (d)(5) for dividing the California and Oregon holdings into two blocks because they satisfied the requirements of subsection (d)(1) and because the single-block accounting method "clearly reflected income." [1]

On appeal, the Commissioner does not challenge the Tax Court's findings of fact on the conventional ground that they are clearly erroneous. *See* Fed.R.Civ.P. 52(a); *AMERCO, Inc. v. Commissioner*, 979 F.2d 162, 164 (9th Cir.1992) (Tax Court's findings of fact reviewed for clear error); *Shell Oil Co. v. Commissioner*, 952 F.2d 885, 893 (5th Cir. 1992) ("[T]he analysis of the reasonableness, fairness or propriety of an apportionment method [for purposes of depletion] . . . is a factual [inquiry] requiring a remand to the tax court for appropriate findings.").[2] Instead, the Commissioner argues that her disallowance of RLC's single-block method of accounting constituted an agency interpretation of its own regulations that is entitled to "substantial deference" by the Tax Court. *See, e.g., Thomas Jefferson Univ. v. Shalala*, — U.S. —, —, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations."). Accordingly, the Commissioner argues, the Tax Court erred as a matter of law because it should have

reviewed the Commissioner's disallowance of the single-block accounting method under an arbitrary and capricious standard rather than make independent findings of fact based upon the evidence it heard.

The Commissioner also asks us to reverse the Tax Court's judgment for failing to defer to her disallowance of RLC's accounting method on the alternative ground that even if RLC's Oregon and California timber holdings satisfied the requirements of subsection (d)(1) for single-block accounting, subsection (d)(5) vested her with the "overriding power" to require RLC to divide its timber into two blocks if the Commissioner decided, in the exercise of her discretion, that the size of the depletion allowance was "unreasonable." We consider these alternative arguments in turn.

I

THE SUBSECTION (d)(1) ARGUMENT

 The Commissioner's subsection (d)(1) argument is conceptually flawed because it confuses an agency's power to interpret its own regulations with the power to apply those regulations to the facts of a particular case. To be sure, courts "must give substantial deference to an agency's interpretation of its own regulations," *Thomas Jefferson Univ.*, — U.S. at —, 114 S.Ct. at 2386, one reason being that "the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers," *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991).[3] However, the process

---

1. In addition to arguing to the Tax Court that RLC's single-block accounting method resulted in an unreasonably large depletion allowance, the Commissioner made the isomorphic argument that RLC's single-block accounting method did not "clearly reflect income" as required by I.R.C. § 446 (General Rule for Methods of Accounting). The Commissioner abandons this argument on appeal, explaining that "because this case involves a method of depletion, the controlling statute is I.R.C. § 611, and there [is] no reason to reach the question whether the claimed depletion allowance was allowable under I.R.C. § 446." Appellant's Br. at 21.

2. At oral argument, the Commissioner acknowledged that the Tax Court made a finding of fact

when it determined that RLC's Oregon and California timber holdings constituted a "common logical management area" which justified their inclusion in a single accounting block under subsection (d)(1). *See also* Appellant's Br. at 21.

3. The Commissioner adds that in the area of depletion, special deference is warranted. For support, the Commissioner cites *Helvering v. Wilshire Oil Co.*, 308 U.S. 90, 103, 60 S.Ct. 18, 84 L.Ed. 101 (1939), which stated that:

 [T]he highly technical and involved factors entering into a practical solution of the problem of depletion in administration of the tax laws points to the necessity of interpreting [I.R.C. § 611] so as to strengthen rather than to weak-

of hearing the evidence in a particular case, finding the relevant facts, and applying the regulations to those facts, is a judicial, not a legislative function. *See, e.g., Id.* at 154–55, 111 S.Ct. at 1178 ("[M]aking authoritative findings of fact and ... applying the Secretary's standards to those facts in making a decision" are "adjudicatory powers typically exercised by a *court* in the agency-review context.") (emphasis in original).

The Tax Court, not the Commissioner, heard the evidence in this case. The Commissioner, like the taxpayer, was merely a party at the trial. It was the province of the Tax Court, not the Commissioner, to exercise the judicial function of finding the relevant facts based on the evidence, including the ultimate finding that the California and Oregon timber holdings were properly included in a single block under subsection (d)(1) because they comprised a "common logical management area." In other words, it was the Tax Court's role, not the Commissioner's, to adjudicate the case. The Commissioner was free to ask this court on appeal to set aside the Tax Court's findings as clearly erroneous, but the Commissioner has chosen not to do so.

In arguing that the Tax Court should have deferred to her determination that RLC's timber holdings did not meet the single-block standards of subsection (d)(1), the Commissioner misconstrues her own powers. The rule that courts give deference to agency interpretations of regulations is inapposite here. All the cases cited by the Commissioner that apply that rule involve an agency's elaboration of general standards or principles, or clarification of the language of the regulation at issue—all "component[s] of the agency's delegated lawmaking powers." *Martin,* 499 U.S. at 151, 111 S.Ct. at 1176; *see, e.g., North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 516–17, 538–39, 102 S.Ct. 1912, 1926–27, 72 L.Ed.2d 299 (1982) (whether regulation referring to "any education program or activity" means an educational institution

as a whole); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 560–61, 100 S.Ct. 790, 794–95, 63 L.Ed.2d 22 (1980) (whether regulation referring to "amount, or method of computing the amount, of any default" includes acceleration clauses); *INS v. Stanisic,* 395 U.S. 62, 72, 89 S.Ct. 1519, 1525–26, 23 L.Ed.2d 101 (1969) (whether regulation referring to "any alien crewman ... whose ... permit ... is revoked" includes alien crewmen whose vessels have departed); *Udall v. Tallman,* 380 U.S. 1, 4–6, 85 S.Ct. 792, 795–96, 13 L.Ed.2d 616 (1965) (whether order referring to "settlement, location, sale or entry" includes leases for oil and gas); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 415–16, 65 S.Ct. 1215, 1217–18, 89 L.Ed. 1700 (1945) (whether regulation referring to "highest price charged during March" means highest price of goods delivered and paid for in March, or only delivered). Here, the Commissioner offers no general elaboration of the standards set forth in (d)(1), no clarification of what "single point of manufacture," "geographical or political boundaries," or "logical management area" means. *See* subsection (d)(1). Instead, she merely insists that her application of the regulations to the particular facts of RLC's case be insulated from traditional adjudication under the guise of deference to an agency's interpretation of its own regulations.

In sum, we reject the Commissioner's argument that the Tax Court erred in making an independent finding that RLC's California and Oregon timber holdings comprised a "common logical management area" that qualified for single-block accounting under Treas.Reg. § 1.611–3(d)(1) rather than reviewing the Commissioner's contrary determination under an abuse of discretion standard.

## II

### THE SUBSECTION (d)(5) ARGUMENT

I.R.C. § 611(a) provides:

---

en the administrative powers to deal with it equitably and reasonably.

But as RLC points out, *Wilshire Oil* is not on point. In *Wilshire Oil,* the issue was whether the Commissioner had the power to issue regulations via prospective rulemaking under the authority

of a statutory precursor to I.R.C. § 611. That power is not disputed by RLC. What is in dispute is whether the Tax Court must defer to the Commissioner's application of her regulations to the facts of a case it is litigating before that court.

In the case of ... timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion ... in all cases to be made under regulations prescribed by the Secretary.

In turn, subsection (d)(5) of the regulations promulgated pursuant to section 611(a) provides:

> For good and substantial reasons satisfactory to the district director, or as required by the district director on audit, the timber ... accounts may be readjusted
>
> ....

■ The Commissioner argues that subsection (d)(5) vests her with the "overriding power to readjust a taxpayer's blocks as needed to reach a reasonable depletion allowance," regardless of whether the blocks comport with the requirements of subsection (d)(1). Appellant's Br. at 25 n. 8. Therefore, according to the Commissioner, her determination of the reasonableness of a taxpayer's depletion allowance can only be disturbed if it is arbitrary and capricious. This argument parallels the Commissioner's subsection (d)(1) argument in the sense that the Commissioner is again attempting to displace the Tax Court in performing the judicial role of applying legal standards to the facts of a particular case. As the Commissioner puts it, "Congress has left it to the Commissioner, and the Commissioner has retained for himself [sic], the right to determine whether a particular 'block' is an appropriate economic unit for purposes of the depletion deduction." Appellant's Br. at 14.

Deferring, as we must, to the Commissioner's interpretation of her regulations,[4] we agree with her that (d)(5) vests her with the discretionary power to readjust a taxpayer's blocks in order to reach what she considers to be a reasonable depletion allowance. Subsection (d)(5) is quite explicit on the point: "[F]or good and substantial reasons satisfactory to the district director ... the timber ... accounts may be readjusted." If we assume, then, that subsection (d)(5) is a valid regulation, the Tax Court did indeed err in failing to limit its decision to a review of the Commissioner's disallowance of RLC's sin-gle-block accounting method under the highly deferential arbitrary and capricious standard. The question, then, is whether (d)(5) is a valid regulation.

■ "In determining whether a challenged regulation is valid, a reviewing court must first determine if the regulation is consistent with the language of the statute." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988); *accord Watson Land Co. v. Commissioner,* 799 F.2d 571, 579 (9th Cir.1986) ("[L]egislative regulations, if consistent with statutory authorization, adopted pursuant to proper procedure, and reasonable, have the force of law."). The inquiry thus becomes whether subsection (d)(5), which vests the Commissioner with the "overriding power to readjust a taxpayer's blocks as needed to reach a reasonable depletion allowance," Appellant's Br. at 25 n. 8, is consistent with Congress' mandate in I.R.C. § 611(a) that "there shall be allowed ... a reasonable allowance for depletion ... in all cases to be made under regulations prescribed by the Secretary."

We reject the Commissioner's attempt to read into section 611(a) the authority to prescribe regulations vesting in herself the "overriding power" to decide the reasonableness of a particular taxpayer's timber depletion allowance. The general statutory authority to prescribe regulations found in section 611(a) does not subsume within it the authority to decide individual cases. The Commissioner's expansive reading of section 611(a) eviscerates the fundamental distinction that is deeply embedded in administrative law between quasi-legislative and quasi-judicial power. "Rulemaking, the quasi-legislative power, is intended to add substance to the Acts of Congress, to complete absent but necessary details.... Adjudication, the quasi-judicial power, is intended to provide for the enforcement of agency ... regulations on a case-by-case basis." 3 Glenn A. Mitchell, Basil J. Mezines, & Jacob A. Stein, Administrative Law § 14.01 at 14–2 (1995); *accord Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 448 (9th Cir.1994) ("[A]djudications resolve disputes among

4. *See supra* Part I at 410–411.

specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals."); *Portland Audubon Soc'y v. Endangered Species Comm.,* 984 F.2d 1534, 1540 (9th Cir.1993) ("Where an agency's task is to 'adjudicate disputed facts in particular cases,' an administrative determination is quasi-judicial. By contrast, rulemaking concerns policy judgments to be applied generally in cases that may arise in the future....") (citations omitted); *Motion Picture Ass'n of America, Inc. v. Oman,* 969 F.2d 1154, 1157 (D.C.Cir.1992) (holding that agency engaged in rulemaking, and not adjudication, because, among other things, it "did not purport to decide any individual case"); *American Express Co. v. United States,* 472 F.2d 1050, 1055 (C.C.P.A.1973) ("[A]djudication resembles what courts do in deciding cases, and ... rule making resembles what legislatures do in enacting statutes.") (citation omitted); *Willapoint Oysters v. Ewing,* 174 F.2d 676, 693 & n. 35 (9th Cir.) (noting that adjudications involve "the imposition of a specific duty in personam" whereas rulemaking is "directed primarily at 'situations,' rather than particular persons") *cert. denied,* 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949). In fact, the Administrative Procedure Act defines agency adjudication as an agency action "other than rule making." 5 U.S.C. § 551(6)–(7).

The Commissioner cites no authority for reading into section 611(a)'s run-of-the-mill grant of rulemaking authority the authority to adjudicate the reasonableness of a particular taxpayer's depletion allowance subject only to limited judicial review. The Commissioner's sole argument in support of her position is that in another provision of the Internal Revenue Code—section 166(a)(2)—Congress did delegate such broad authority to the Secretary. Section 166(a)(2) provides:

> Partially Worthless Debts.—*When satisfied* that a debt is recoverable only in part, *the Secretary may allow* such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

(Emphasis added).

The Commissioner is correct that in section 166(a)(2) Congress explicitly granted the Secretary the discretion to decide whether or not to allow partially worthless debt deductions on a case-by-case basis and that courts review those decisions under an arbitrary and capricious standard. *Wilson Bros. & Co. v. Commissioner,* 124 F.2d 606, 609 (9th Cir. 1941). However, the Commissioner's argument by analogy to section 166(a)(2) fails because of a fundamental difference between section 166(a)(2) and section 611(a).

In contrast with section 611(a), section 166(a)(2) explicitly grants the Commissioner the power with respect to partially worthless debt deductions that she now claims with respect to timber depletion deductions: "When satisfied ... the Secretary *may* allow ... a deduction." (Emphasis added). Thus section 166(a)(2) does not entitle a taxpayer to a deduction for a partially worthless debt; whether she gets one in any particular case is left to the discretion of the Secretary.

In striking contrast, section 611(a) does not leave any aspect of the timber depletion allowance to the discretion of the Secretary. Rather, section 611(a) mandates the deduction—"there *shall* be allowed as a deduction ... a reasonable allowance for depletion"— and merely gives the Commissioner the authority to prescribe regulations setting forth standards by which courts will determine the reasonableness of depletion allowances. This rulemaking power is fundamentally different from the discretion granted in section 166(a)(2) to allow or disallow deductions for partially worthless debts *on a case-by-case basis.*

The discretionary power granted to the Secretary in section 166(a)(2) to allow or disallow deductions as a matter of administrative discretion is exceptional. The Commissioner cites only two other such provisions outside the worthless debt context, both of which were repealed in 1989. *See* I.R.C. § 6660(e) (repealed 1989) ("The Secretary may waive all or any part of the addition of the tax provided by this section [for a valuation understatement in calculating estate and gift taxes]...."); I.R.C. § 6661(c) (repealed 1989) ("The Secretary may waive all or any part of the addition to tax provided by this section [for a substantial understatement of tax]...."). The three provisions cited by the Commissioner, section 166(a)(2)

and the two repealed provisions, make it very clear that when Congress intends to leave individual taxpayers to the mercy of the Commissioner on disputes over deductions or penalties, rather than leaving those disputes to be resolved by the courts, it expresses that intent with great clarity. Because it did not so express itself in section 611(a), we respectfully decline the Commissioner's invitation to read into 611(a) the "overriding power" to decide that a taxpayer's timber depletion allowance is unreasonable regardless of Tax Court findings to the contrary.

We hold that Treas.Reg. 1.611–3(d)(5) is invalid because it is not consistent with the rulemaking authority granted to the Secretary in I.R.C. § 611(a).

## CONCLUSION

We reject the Commissioner's contention that the Tax Court erred as a matter of law in failing to review her disallowance of RLC's single-block accounting method under the deferential arbitrary and capricious standard. Accordingly, we AFFIRM the judgment of the Tax Court.